Joe Louis BROKENBERRY, Appellant,

v.

The STATE of Texas, Appellee.

No. A14–91–00688–CR.

Court of Appeals of Texas, Houston (14th Dist.).

April 8, 1993.

Rehearing Denied April 29, 1993.

Charles Freeman, Houston, for appellant.

Karen A. Clark, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and ELLIS and LEE, JJ.

## OPINION

LEE, Justice.

This is an appeal from a conviction for the offense of aggravated robbery. After a plea of not guilty was entered, appellant was tried and convicted by a jury, and upon finding the enhancement allegations true, the jury assessed punishment at sixty years confinement. Appellant brings thirty points of error complaining of the trial court's jurisdiction, the trial court overruling his challenges to the jury array, improper comments by the court and the prosecutor, being deprived of a sufficient record on appeal, and the trial court's overruling his objections to certain hearsay testimony. We affirm.

Appellant was charged with using and exhibiting a deadly weapon during the commission of a theft. On November 6, 1987, the complainant, the owner of a hardware store near downtown Houston, was approached by a man as she entered the rear door of her store. She was returning from the bank and was carrying a vinyl bank bag full of money for her employees. After a brief struggle, the man grabbed the money bag and fled the scene with a sec-

ond man who was waiting near the street. After hearing the complainant's cry for help, Donald Keith Antley, one of the store employees, ran after the men, chasing them a short distance. By the time Antley caught up to the men they were entering a car. At that point, the second man, identified as appellant, pointed a gun at Antley. The men then drove off with the money bag. The vehicle was later found abandoned.

As his first contention, appellant complains that he has been deprived of sufficient record on appeal. Appellant requested that the Clerk of the trial court include certain juror information in the transcript in order to support his position that the make-up of the jury array denied him a fair trial. Appellant presented none of this information to the trial court. If an appellant desires an appellate review of evidence, he must first have offered that evidence at the trial court level for inclusion in the record on appeal. *Miller v. State*, 736 S.W.2d 643, 648 (Tex.Crim.App. 1987). The record before us fails to indicate that the documents appellant requested to be included as part of the transcript were ever entered into evidence. Appellant's first point of error is overruled.

Appellant's second point of error contends that the trial court erred by denying his objection to and challenge of the trial court's jurisdiction. Such challenge was based on the Voting Rights Act of 1965. Specifically, appellant argues that the "at-large" voting by registered voters of Harris County, Texas, diluted the voting strength of the registered minority voters. The Court of Criminal Appeals overruled a similar point of error stating that it represented "an impermissible collateral attack upon the [trial judge's] authority to hold office." The Court held that the proper method for challenging the authority of the trial judge is to bring a direct action through *quo warranto* proceedings rather than a collateral attack at trial. *Archer v. State*, 607 S.W.2d 539, 544 (Tex.Crim.App. 1980) *cert. denied*, 452 U.S. 908, 101 S.Ct. 3037, 69 L.Ed.2d 410 (1981). Appellant's second point of error is overruled.

Appellant's third point of error contends that the trial court erred in denying his motion to discover the identity of a confidential informer. Appellant argues that such informer is able to give testimony necessary to a fair determination of the issues of guilt in this case. The State in a criminal trial has a privilege to refuse to disclose the identity of a person who has furnished information relating to or assisting in an investigation of a possible violation of law to a law enforcement officer. TEX.R.CRIM.EVID. 508(a). However, subsection two of Rule 508(c) requires the State to disclose the informer's identity under certain circumstances. Rule 508(c)(2) provides that:

> If it appears from the evidence in the case or from other showing by a party that an informer may be able to give testimony necessary to a fair determination of the issues of guilt, innocence and the public entity invokes the privilege, the judge shall give the public entity an opportunity to show in camera facts relevant to determining whether the informant can, in fact, supply that testimony.

The burden is initially on the accused to show that there is an informer who may be able to give testimony necessary to a fair determination of the defendant's guilt or innocence. *Smith v. State*, 781 S.W.2d 418, 421 (Tex.App.—Houston [1st Dist.] 1989, no pet.); *Bodin v. State*, 807 S.W.2d 313, 318 (Tex.Crim.App.1991). Evidence from any source, but not mere conjecture or speculation, must be presented to make the required showing that the informer's identity must be disclosed. *Id.* at 318. Only after such a showing is the trial court required to hold an in camera hearing. 781 S.W.2d at 421. The mere filing of a Rule 508 motion is insufficient to obtain a hearing, much less compel disclosure. 807 S.W.2d at 318.

In the instant case, appellant's motion to discover the identity of the informer merely stated, "[t]hat such informer is able to give testimony necessary to a fair determination of the issues of guilt in this cause." At the pretrial motions hearing, appellant's only remark concerning his motion to dis-

cover the identity of the informer was, "... the informant was a participant both in the—in the eventual warrant that was issued for Joe Brokenberry's arrest." Appellant has wholly failed to meet his burden and the trial court did not error in denying appellant's motion. Appellant's third point of error is overruled.

█ In his next nineteen points of error, appellant complains that he could not adequately challenge the array because the trial court erred in refusing to rule and/or denying some of his motions, and overruling his objection to the venire drawn from the array. Appellant framed his motions in the following constitutional and statutory provisions: TEX.CODE CRIM.PROC.ANN. arts. 1.04, 1.05, 1.12, 1.27, 2.03(b); TEX.CODE CRIM.PROC.ANN.—Chapter 35; TEX.GOV'T CODE ANN.—Chapter 62; TEX. CONST. art. I, §§ 3, 3a, 10, 13, 15, 19, 29; TEX. CONST. art. II, § 1; TEX. CONST. art. V, §§ 10, 16, 19; and TEX.GOV'T CODE ANN. §§ 62.011, 62.014, and 62.110.

To properly challenge an array, the party must in writing allege that the officer summoning the jury has wilfully summoned jurors with a view to securing a conviction or acquittal. TEX.CODE CRIM.PROC.ANN. art. 35.07 (Vernon 1992). Further, when the challenge is by the defendant, it must be supported by his affidavit or the affidavit of any credible person. *Id.* Appellant, in the instant case, has failed to frame his objection in the terms dictated by the Code; nor is there any evidence that the motion was accompanied by the requisite affidavit. *See Stephenson v. State,* 494 S.W.2d 900 (Tex.Crim.App.1973).

█ Appellant also complains that he has been denied a fair trial because resummoned and/or rescheduled jurors were placed in his array. Appellant has shown no violation of State or Federal law by the court in allowing individuals who had rescheduled their jury duty, to serve on this array. Furthermore, appellant must prove that he was forced to take an objectionable juror before we can find reversible error. *Esquivel v. State,* 595 S.W.2d 516 (Tex. Crim.App.1980). Being rescheduled for jury duty does not make an individual unfit

for service. It in no way affects one's ability to render a true and fair verdict. *Johnson v. State,* 846 S.W.2d 373, 375 (Tex. App.—Houston [14th Dist.] 1992, no pet.). Appellant has presented no evidence that he suffered harm by allowing prospective jurors to reschedule into the array in this case. We overrule points four through twenty-two.

█ Appellant's twenty-third point of error contends that the trial court erred in overruling his objection to the State's voir dire examination of the venire on the issue of what constitutes a deadly weapon. After the prosecutor read the indictment to the jury, she began her voir dire on the subject of deadly weapons. The following exchange occurred:

PROSECUTOR: Deadly weapon. In this case I don't think there's going to be a real issue on that because the law says that a firearm is, per se, a deadly weapon. But also there is a definition that would include it that where anything that's manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury. Do we all agree that a firearm is all of those things, designed for that purpose? Any questions on that? Yes, sir. No. 14?

JUROR NO. 14: Designed to hurt somebody, is that what you are trying to say?

PROSECUTOR: Hurt something, I guess you could say. But it's designed usually to cause serious bodily injury or death. I think even though some of us like to go out and shoot at targets, the real design of a weapon and of a bullet usually is for the purpose of shooting at something living, isn't it?

A JUROR: Would it matter if it was operational or not?

PROSECUTOR: The law says no?

A JUROR: Or a toy?

PROSECUTOR: Well, there you might get into another angle. No if it's a real gun, it doesn't have to be operational, it doesn't have to be loaded. What do you all think about that?

DEFENSE: Your Honor, I object. That's not a correct statement. That is a misstatement of the law.

THE COURT: Overruled.

PROSECUTOR: What do you all think about the fact that to be a deadly weapon, according in an aggravated robbery, it doesn't have to be loaded or operational?

DEFENSE: Again I object to the—

THE COURT: You've objected. You have your bill. Just move it along. You don't have to object twice to the same question. You are protected.

DEFENSE: Yes, Your Honor.

PROSECUTOR: What do you all think about that? Got any problem with that? Let me ask it this way: If I point a gun at you, are you going to care at that point whether or not someone else thinks it's loaded or operational? It's all the same isn't it, when it's pointed at you, it's a deadly weapon, isn't it?

Appellant argues that the prosecutor's comments conveyed a misstatement of law to the jury. Specifically, appellant contends it was error for the prosecutor to suggest to the jury that a *mere gun* does not have to be loaded or operational in order for it to be found to be a deadly weapon. We note that the record before us does *not indicate that the prosecutor ever used the words "mere gun" in her examination,* however, twice in her dialogue with the venire, the prosecutor referred to a gun, and in the same sentence, stated that it does not have to be loaded or operational. Appellant cites *Ex Parte Grabow*, 705 S.W.2d 150 (Tex.Crim.App.1986), for the proposition that a mere gun, without more, is not per se a deadly weapon. We agree.

Our reading of the entire statement by the prosecutor, reveals that she was explaining to the jury what the law states about a firearm—that it is per se a deadly weapon. In doing so, the prosecutor stated that a gun need not be operational or loaded *in order to be found to be a deadly weapon.* This is not the law, and it was error for the trial court to overrule appellant's objection.

Having found error, it is necessary for us to conduct a harm analysis.

The function of an appellate court's harmless error analysis is not to determine how the appellate court would have decided the facts, but to determine to what extent, if any, [the] error contributed to the conviction or the punishment. *Harris v. State,* 790 S.W.2d 568, 585 (Tex. Crim.App.1989). In this case, we must determine whether the jury found appellant guilty because of the misstatement by the prosecutor, that a gun does not have to be loaded or operational in order to be a deadly weapon.

We are not pointed to any place in the record, nor can we find any attempt by the prosecutor during trial, to place before the jury the idea that a "mere gun," as opposed to a firearm, is a deadly weapon per se. Therefore, the only misstatement occurred during voir dire. We note that the prosecutor, in addition to using the word gun, also used the words firearm and deadly weapon in her examination during voir dire. The prosecutor made no attempt to restate her proposition during her closing argument. Furthermore, the trial court correctly charged the jury on the law, and it is presumed that the jury obeyed the court's charge. We do not believe that the trial court's failure to sustain appellant's objection on this issue influenced the jury's determination of guilt for aggravated robbery. Therefore, we find beyond a reasonable doubt that the error made no contribution to the conviction.

■ Appellant's twenty-fourth point of error contends that the trial court erred in overruling his motion for mistrial in response to the following exchange made by the prosecutor during her opening statement:

PROSECUTOR: You'll also hear testimony that through following up the leads with the car and then also as a result of information given to Sergeant Clinton of the Houston Police Department from a confidential informant.

DEFENSE: Your Honor, objection.

THE COURT: Sustained.

DEFENSE: We'd ask for an instruction.

PROSECUTOR: If I may finish my sentence, it abides with what we discussed earlier.

DEFENSE: I'd ask for an instruction to disregard.

THE COURT: Let's leave that part out in the opening statement.

DEFENSE: Instruction to disregard, Your Honor.

THE COURT: This is an opening statement. The opening statement is not evidence, as such. This is merely to advise you as to what the parties think that they are going present. So you may continue.

Appellant argues that the State's argument was improper because the State never offered evidence at trial that there was any information given to Sergeant Clinton from a confidential informant. A preliminary statement of what the State expects to be proved is proper. *Marini v. State,* 593 S.W.2d 709, 715 (Tex.Crim.App.1980). In *Marini,* the Court of Criminal Appeals overruled a similar ground of error despite the State's failure to introduce the evidence during trial. *Id.* See also *Brown v. State,* 756 S.W.2d 793, 796 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd). Moreover, the trial court sustained appellant's objection and advised the jury that the prosecutor's opening statement did not constitute evidence. It is presumed that the jury obeyed the instruction to disregard. *Nichols v. State,* 754 S.W.2d 185, 200 (Tex.Crim. App.1988), *cert. denied,* 488 U.S. 1019, 109 S.Ct. 819, 102 L.Ed.2d 808 (1989). Such instruction was sufficient to cure harm, if any. Appellant's twenty-fourth point is overruled.

▪ In points of error twenty-five and twenty-six, appellant contends that the trial court erred in overruling his objections to answers given by two different witnesses in response to prosecutorial questioning that resulted in the admission of alleged hearsay statements. The first response complained of was given by Donald Antley. During the prosecutor's direct examination, the following exchange occurred:

PROSECUTOR: Did you have a meeting with a Sergeant Clinton from the Houston Police Department?

WITNESS: Yes, ma'am.

PROSECUTOR: And do you recall whether or not on February 2nd of 1988 Sergeant Clinton brought you a set of pictures to look at?

WITNESS: Yes, ma'am.

PROSECUTOR: What did Sergeant Clinton instruct you as to when he brought you that set of pictures?

WITNESS: We went into an office.

DEFENSE: I object to what the sergeant said as constituting hearsay.

THE COURT: Overruled.

WITNESS: Like I said, the sergeant took me in an office by ourself and he told me, he said, I have a set of pictures I want you to look at. We may or may not have suspects in this set of pictures.

The second response complained of was given by Sergeant Clinton during the prosecutor's direct examination. The prosecutor asked, "[w]hen was it that you became aware of what had occurred on November 6th, 1987 at Riggsbee Hardware?" The sergeant responded, "[i]n February." The prosecutor then asked, "[o]f what year?" and the sergeant replied, "[o]f '88."

Appellant now claims that Antley's testimony concerning the instructions given him by Sergeant Clinton, coupled with Antley's and Clinton's subsequent related answers, sought to both directly and indirectly convey to the jury information that otherwise unidentified confidential informants, who never testified, informed Sergeant Clinton that appellant was one of two suspects in this cause. We disagree. First, Antley's response made no mention that any confidential informants had informed the sergeant that appellant was one of two suspects in this cause. Second, Sergeant Clinton stated only that he had become aware of what happened at Riggsbee Hardware in February of 1988. He did not state how he had become aware of that fact, nor did he ever mention the existence of a confidential informant.

Even if this court were to find these statements to contain inadmissible hearsay, the error would not require reversal. Hearsay evidence which is improperly admitted over objection will constitute reversible error only if there is a reasonable possibility that the evidence is prejudicial to the defendant or may have contributed to his conviction. *Goodman v. State*, 701 S.W.2d 850, 863 (Tex.Crim.App.1985). Appellant contends that the alleged hearsay statements were harmful in that such testimony was inculpatory with respect to his guilt. The record reveals that Antley personally identified appellant as the person who used the gun in the instant offense. We do not believe that the admission of the statements complained of influenced the jury's determination of appellant's guilt. We therefore find that the error, if any, made no contribution to appellant's conviction. Appellant's twenty-fifth and twenty-sixth points of error are overruled.

In his twenty-seventh point of error, appellant contends that the trial court committed reversible error by overruling his objection to the State's remark, "Forgive my confusion, but I believe you testified earlier." Appellant argues that this statement constituted a sidebar remark. The remark came after defense counsel, on recross-examination of the State's witness, elicited testimony concerning the events surrounding the entry into the getaway car by appellant and another individual. The testimony given by the witness on recross was in conflict with his earlier testimony.

Side bar remarks are remarks of counsel that are neither questions to the witness nor comments addressed to the court. *Middleton v. Palmer*, 601 S.W.2d 759, 763 (Tex.App.—Dallas 1980, writ ref'd n.r.e.). We cannot agree with appellant that the prosecutor's remark constitutes a side bar remark. The comment can be said to be nothing more than an introduction to further questioning by the prosecutor.

Even if we found the comment to be a side bar remark, not every side bar remark is grounds for reversal. *In Re W.G.W.*, 812 S.W.2d 409, 416 (Tex.App.—Houston [1st Dist.] 1991, no writ). To obtain reversal of a judgment on the basis of improper side bar comment, an appellant must prove the side bar remark interferes with the appellant's right to a fair trial. *Id.* Appellant has not shown that the prosecutor's comment denied him a fair trial. Appellant's twenty-seventh point of error is overruled.

Appellant's twenty-eighth point of error contends that the trial court erred by overruling his objection to the trial court's comment, "I'm confused too, counsel. Sidebar, but I'm confused too." The comment by the court came immediately after the prosecutor's comment addressed in point of error twenty-seven.

To constitute reversible error, a comment by the trial court must be reasonably calculated to benefit the State or prejudice to defendant's rights. *Becknell v. State*, 720 S.W.2d 526, 531 (Tex.Crim.App. 1986). We do not agree with appellant that the trial court's comment was calculated to improperly convey to the jury that it should also be confused as a result of what appeared to be conflicting testimony on appellant's identification. Instead, the court's comment appears to be nothing more than a harmless expression of humility. Appellant's twenty-eighth point of error is overruled.

Appellant's last two points of error complain that the State's argument to the jury and the trial court's comment on such argument were improper. During the prosecutor's closing argument, the following exchange occurred:

PROSECUTOR: It's interesting, too, that Mr. Freeman brings up prior testimony in front of you. You saw him using a big thick packet of papers, something that showed what these people had said years ago with regard to this case. Even though he had all that written down, he couldn't do much with these witnesses, could he? There was a reason for that. When a person tells the truth, it will remain consistent in its essential elements. They may become confused about some of the details over time, but the truth itself does not change. . . .

You've seen the demeanor of these witnesses, willing to answer questions regardless of which attorney asks them. You've been able to observe the demeanor. You are allowed to observe the demeanor of all the parties and witnesses throughout the trial.

DEFENSE: I'm going to object to that as being a comment on the accused—Article 38.08, Texas Code of Criminal Procedure.

COURT: Ladies and Gentlemen, I would ordinarily overrule it, but as matter [sic] of precaution I will advise you that the charge contains specific instructions about the failure of the Defendant to testify. You may not consider that for any purpose. You may not discuss it, you may not think about it. And that is the law. I don't think it was raised, but just as a matter of precaution I will advise the jury to that. Thank you.

After this exchange appellant requested a mistrial, which the court denied. Appellant then objected to the trial court's response as being an improper comment on appellant's failure to testify. Appellant first contends that the trial court erred by denying his motion for mistrial, because the prosecutor's statement that the jury was "allowed to observe the demeanor of all the parties" constituted a comment on appellant's failure to testify.

■ For a statement to constitute a comment on the failure to testify, the language of such a statement must be either manifestly intended, or of such a character that the jury would naturally and necessarily take it to be a comment on the defendant's failure to testify. *Jackson v. State,* 745 S.W.2d 4, 14 (Tex.Crim.App.1988), *cert. denied,* 487 U.S. 1241, 108 S.Ct. 2916, 101 L.Ed.2d 947 (1988). For an indirect comment to constitute reversible error, it must call for a denial of an assertion of fact or contradictory evidence that only the defendant is in a position to offer. *Id.; Short v. State,* 671 S.W.2d 888 (Tex.Crim.App.1984).

The prosecutor's statement to the jury was by no means a statement "manifestly intended," or of such a character that the jury would naturally and necessarily take it to be a comment on the defendant's failure to testify. It is clear from reading the prosecutor's entire argument that the reference to "all the parties" was intended to be a general term referring to the complaining witness, the eyewitness, as well as the defendant. The statement in no way isolated the defendant as the only person capable of being described as a party. Furthermore, the statement was not such that it called for a denial of an assertion of fact or contradictory evidence which only appellant was in a position to offer. Even assuming that the statement did indirectly refer to appellant's failure to testify, the trial court's instruction to disregard was sufficient to cure the error, if any. *Jackson,* 745 S.W.2d at 15; *Hawkins v. State,* 660 S.W.2d 65, 79 (Tex.Crim.App.1983).

■ Appellant next claims that the trial court's response to his objection was calculated to improperly convey to the jury that, in spite of appellant's failure to testify, the jury may consider his demeanor. To constitute reversible error, a comment by the court must be reasonably calculated to benefit the State or prejudice the defendant's rights. *Becknell,* 720 S.W.2d at 531. Appellant has failed to show and the record does not indicate how the trial court's response benefited the State or harmed him. To the contrary, the judge acknowledged that he did not believe that the prosecutor's statement constituted a comment on appellant's failure to testify, and we agree. Further, as a precaution, the judge instructed the jury not to consider appellant's failure to testify for any reason whatsoever. As such, the trial court was insuring that the statement would not cause appellant any harm. It is presumed that the jury obeyed the trial court's instruction. *Nichols v. State,* 754 S.W.2d at 200. Appellant's twenty-ninth and thirtieth points of error are overruled.

The judgment of the trial court is affirmed.